[Cite as *State v. Bonness*, 2012-Ohio-474.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
### No. 96557

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROBERT BONNESS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED AND REMANDED
## FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543662

**BEFORE:**   Stewart, J., Kilbane, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   February 9, 2012

ATTORNEY FOR APPELLANT

Edward R. LaRue
75 Public Square
Suite 800
Cleveland, OH   44113


ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor

BY:   Jesse W. Canonico
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH   44113




MELODY J. STEWART, J.:

{¶ 1}   Defendant-appellant, Robert Bonness, pleaded guilty to one count of attempted rape; eight counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1); six counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(5); eight counts of the illegal use of a minor in nudity-oriented material or

performance in violation of R.C. 2907.323(A)(3); and two counts of possession of criminal tools. As relevant here, the court imposed consecutive five-year terms on the eight illegal use of a minor in nudity-oriented material or performance counts. When added to the sentences imposed on the other counts, including an eight-year term for attempted rape, Bonness received a total prison term of 52 years and six months.

{¶ 2} In this appeal, Bonness asserts two assignments of error: (1) that the court abused its discretion by ordering the maximum sentence on the attempted rape count, and (2) that the court abused its discretion by ordering him to serve the eight counts of illegal use of a minor in nudity-oriented material or performance (we will refer to these as the "child pornography" counts) consecutively because the sentence constituted a de facto life sentence. We find that the court did not abuse its discretion by ordering a maximum sentence for the attempted rape count, but agree that consecutive sentences in this case were disproportionate to those rendered in similar cases, so we reverse and remand for resentencing.

I

{¶ 3} Bonness was a 53-year-old retired police officer with no prior criminal record. He was caught in a police sting that involved his answering an anonymous internet posting from a fictitious father and daughter who were "looking for the right person in the Cleveland area" to do things "that

may interest that special person." Bonness was undeterred when he learned from the poster that the daughter was only 12 years old, and even asked the poster, "does she swallow?" He exchanged several emails with the poster, each growing more graphic in its description of the sex acts that he hoped he and the daughter might mutually perform. These exchanges went on for several months and Bonness, satisfying himself that the 12-year-old would be a willing participant, actually spoke on the telephone with an undercover officer pretending to be the fictitious 12-year-old. Bonness finally arranged to meet the father and daughter at a hotel and, when he arrived, was arrested.

{¶ 4} Upon arrest, Bonness waived his right to remain silent. He confessed that had there been a young girl present in the hotel room, he would have engaged in sexual activity with her, but allowed that he would only have done so after satisfying himself that she was not being forced to submit. The police searched Bonness's car and found condoms, lubricants, and vibrators. Bonness told the police that he had a sexual addiction and kept child pornography at his house. A search of his computer uncovered 94 pornographic files, some of which were videos showing children under the age of 13 engaging in deviant sexual acts. The court described one of the videos as showing a child being digitally and anally penetrated, forced to perform oral sex, defecated upon, handcuffed, and restrained in a dog kennel.

{¶ 5} As previously noted, the court imposed an eight-year sentence on the attempted rape count and consecutive five-year terms on the eight illegal use of a minor in nudity-oriented material or performance (child pornography) counts. It also imposed concurrent 18-month terms on the six pandering sexually-oriented matter involving a minor counts; concurrent 12-month terms on the eight pandering sexually-oriented matter involving a minor counts; and consecutive 12-month terms on the two criminal tools counts.

II

A

{¶ 6} At one time, Ohio law created presumptions that offenders be given minimum, concurrent terms of incarceration. *See* former R.C. 2929.14(B), 2929.14(E)(4), 2919.19(B)(2), and 2929.41. These presumptions could be overcome if the court made specific factual findings regarding the nature of the offense and the need to protect the public. This judicial fact-finding was called into question by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in which the United States Supreme Court held that judicial fact-finding could infringe upon a defendant's Sixth Amendment right to a jury trial because it invaded the fact-finding function of the jury. In *State v. Foster*, 109 Ohio St.3d 1,

2006-Ohio-856, 845 N.E.2d 470, the Ohio Supreme Court held that under *Apprendi* and *Blakely*, Ohio's sentencing statutes that required a judge to make factual findings in order to increase a sentence beyond presumptive minimum or concurrent terms unconstitutionally infringed upon the jury's fact-finding function in violation of the Sixth Amendment. It, therefore, severed those sections and held that courts have full discretion to sentence within the applicable statutory range and likewise have discretion to order sentences to be served consecutively. *Id.* at ¶ 99-100.

{¶ 7} *Foster* was partially called into question by *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), in which the United States Supreme Court later ruled that neither *Apprendi* nor *Blakely* implicated a sentencing judge's long-understood authority to order sentences to be served consecutively. The Ohio Supreme Court later acknowledged that *Foster* erroneously applied *Apprendi* and *Blakely* to ban judicial fact-finding in support of consecutive sentences, but ruled that *Ice* could not revive that which had previously been severed as unconstitutional in *Foster*. *See State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, paragraph two of the syllabus. In other words, R.C. 2929.14(E)(4), which had been declared unconstitutional and severed in *Foster*, remained severed.[1] Thus, *Ice* had no

---

[1] The General Assembly reenacted the consecutive sentencing provisions formerly contained in R.C. 2929.14(E)(4) in R.C. 2929.14(C)(4), effective September 30, 2011. The court sentenced

practical effect on *Foster*, meaning that the court still has "the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently * * *."  *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 19.

B

**{¶ 8}**  Even though there are no longer any express factors for the court to consider before imposing sentences consecutively, the sentencing judge's discretion must nonetheless be guided by a consideration of the statutory policies that apply to every felony offense, including those set forth in R.C. 2929.11 and 2929.12.  *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 37.  The sentencing factors apply to decisions to impose sentences consecutively.  *See State v. Freeman*, 8th Dist. No. 95608, 2011-Ohio-5651, 2011 WL 5222669, ¶ 25.

**{¶ 9}**  One of the "overriding" purposes of felony sentencing is "to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources."  R.C. 2929.11(A).  To achieve that overriding purpose, a felony sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim,

Bonness on March 9, 2011, so the reenacted provisions do not apply to him.

and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 10} While the sentencing judge has discretion to determine the most effective way to comply with R.C. 2929.11, the sentencing judge may only exercise that discretion after considering the seriousness, recidivism, and mitigating factors set forth in R.C. 2929.12. A separate finding on each statutory factor is not required — the duty is satisfied merely by noting that the sentencing factors were considered. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 18; *State v. Wright*, 8th Dist. No. 95096, 2011-Ohio-733, 2011 WL 550095, ¶ 4.

III

{¶ 11} Bonness first argues that the court erred by imposing the maximum eight-year sentence on the attempted rape count. While conceding that a minimum sentence would not have been appropriate, he claims that the maximum term was inappropriate because he was a first-time offender who cooperated with the police, that there was no actual victim given that he was the subject of a police sting, and that even had there been an actual victim, there was still the potential that he could abandon the plan before committing any crime.

{¶ 12} The court stated that it considered the relevant statutory factors, so that statement by itself was enough to fulfill its obligations under R.C.

2929.11 and 2929.12. *See State v. Arnett*, 88 Ohio St.3d 208, 215, 2000-Ohio-302, 724 N.E.2d 793; *State v. Woodward*, 8th Dist. Nos. 94672 and 94673, 2011-Ohio-104, 2011 WL 198594, ¶ 6. Nevertheless, a rote statement that the statutory factors have been considered should not be examined in a vacuum — it must be considered in the context of facts brought out during sentencing as applied to the relevant sentencing factors. The court had a presentence investigation report, along with sentencing memoranda submitted by the parties. It also heard from Bonness, his attorney, and the assistant prosecuting attorney.

{¶ 13} Cooperation with authorities is not a stated factor for consideration under R.C. 2929.12. In capital cases, "[a] defendant's confession and cooperation with law enforcement are mitigating factors." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶191. However, the Supreme Court has made it clear that in capital cases, mitigation applies only to sentencing and does not necessarily excuse a defendant's culpability. *State v. Holloway*, 38 Ohio St.3d 239, 527 N.E.2d 831 (1988), paragraph one of the syllabus. R.C. 2929.12(C)(4) takes the opposite approach — it allows the sentencing judge to consider whether there were "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."

{¶ 14} While it is true that Bonness immediately confessed his involvement in seeking a sexual liaison with a 12-year-old girl, that confession did not mitigate his conduct leading up to his arrest. Perhaps his quick confession, cooperation with the investigation, and guilty plea made the case easier to prosecute, but there is little doubt on the record before us that the state possessed overwhelming evidence of Bonness's guilt and would not likely have encountered difficulty in presenting and winning its case at trial. The court rationally could have found that the cooperation of a defendant who was caught in the act of committing a crime was entitled to little, if any, weight.

{¶ 15} Bonness's claim that he was entitled to favorable treatment because he might still have abandoned the crime before committing it is not supported by the record. He admitted to the police upon his arrest that had there been an actual and willing father and child available for a liaison, he would have engaged in sexual activity with the child. He pursued a sexual liaison for several months, sending graphic email messages. He even spoke with an undercover police officer, posing as the fictitious 12-year-old, in order to satisfy himself that the child would be a willing participant. Finally, the police found sex paraphernalia and female stimulant gel in Bonness's car. Bonness was fully prepared to go forward with an illicit liaison. His

suggestion that he might have backed out of the liaison had the police not intervened is not worthy of serious consideration.

{¶ 16} Finally, while it is true that there was no actual victim of the attempted rape, we fail to see how this mitigates the seriousness of Bonness's actions. He was ready and willing to have sex with a 12-year-old, demonstrated by his arrival at the hotel with a car trunk containing sex toys. Although there was no actual victim, Bonness thought there would be, as demonstrated by his insistence that he first speak to the child to ensure her willingness to have sex with him. He had taken substantial, concrete steps to consummate an encounter with a 12-year-old and was stopped from doing so by his arrest.

{¶ 17} We thus see nothing in the record that would mitigate Bonness's conduct leading up to his arrest. On the other hand, the court could rationally consider the seriousness of the attempted rape of a 12-year-old and the very substantial steps Bonness took to make that rape happen. The court did not abuse its discretion by finding that Bonness's conduct went so far beyond mere "curiosity" that it was deserving of the most severe penalty allowed by law.

IV

{¶ 18} The next issue raised by Bonness is whether the court abused its discretion by running the eight child pornography counts consecutively. He

argues that the court erroneously gave weight to the fact that Bonness was a police officer despite knowing that Bonness had been retired from the police force at the time of his offenses; that the court neglected to consider that Bonness was a first-time offender who cooperated with the police and showed great remorse for his actions; and that the total sentence was disproportionate to his conduct and inconsistent with those given to similar offenders.

## A

{¶ 19} R.C. 2929.12(B)(1) and (2) require the court to consider the "physical and mental injury" suffered by the victim of the offense and whether that injury was "exacerbated" because of the victim's physical or mental condition or age. The court found that the victims were the children used to make the child pornography Bonness had in his possession. It found that every viewing of the images and films constituting the child pornography constituted a revictimization of the children. It noted that many of the children depicted in the pornography had been identified and that the abuses perpetrated upon them were essentially a "life sentence" because they know that "as they get older and start to understand the breadth and scope * * * of their abuse, their victimization continues."

{¶ 20} While Bonness disagrees with the court's conclusion about the continued revictimization of children shown in child pornography, that

conclusion is within the mainstream of legal opinion. For example, when amending 18 U.S.C. 2252, the United States Congress found that "[c]hild pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed." *See Effective Child Pornography Prosecution Act of 2007*, Pub. L. No. 110-358, Section 102(3), 122 Stat. 4001 (2008). *See also* Leary, *Self-Produced Child Pornography: The Appropriate Societal Response to Juvenile Self-Sexual Exploitation*, 15 Va.J.Soc.Policy&L. 1, 9-11 (2007) (arguing that an image of child pornography is a permanent record that "uniquely affects victims far into the future" and that "creates a continual cycle of abuse"). It follows that the court did not abuse its discretion by relying on the revictimization of the children shown in the pornography as a sentencing factor.

{¶ 21} R.C. 2929.14(B)(3)-(5) focus on the offender's occupation, whether he held a position of trust in the community, whether the offender's occupation or profession obliged him to prevent the offense and bring others to justice, and whether the offender used his profession or occupation to facilitate the offense. The court found that Bonness was a retired police officer whose former position "aggravates the situation" and noted that Bonness used his skills in counter surveillance to avoid being watched by the

police as he arrived at the hotel. The court stated that "your duty, the integrity you are supposed to espouse was certainly lacking."

{¶ 22} Bonness argues that he was no longer a police officer and should not be held to the same standard as a currently-serving police officer. This is a valid point. Had Bonness been an active member of the police department, the court could rationally conclude that he violated a position of trust or authority within the community. But there is no question that he had retired as a police officer well before he committed these offenses. Therefore, he held no position of trust or authority at the time he committed the crimes. The oath of service he swore to uphold as a police officer no longer applied to him, making him no different than any other member of the public. The court should not have considered Bonness's prior service as a police officer as a factor for imposing sentences consecutively. *See State v. Bradford*, 11th Dist. No. 2001-L-175, 2003-Ohio-3495, 2003 WL 21511159, ¶ 30.

{¶ 23} R.C. 2929.14(C) contains factors indicating that the offender's conduct is less serious than conduct normally constituting the offense. These include whether the victim induced or facilitated the offense, whether the offender acted under strong provocation, whether the offender did not cause or expect to cause physical harm, and whether there are grounds for mitigation.

{¶ 24} In mitigation, Bonness again claims that he was a first-time offender and, given the length of sentence, unlikely to reoffend. He also argues that his acts of possessing child pornography did not constitute the worst form of the offense.

{¶ 25} The argument that his lack of a prior record and the lengthy sentence given to him act as insurance that he is unlikely to reoffend is questionable. Given the pervasiveness of the internet, it would be naive to assume that Bonness will be completely insulated from child pornography while in prison. Bonness's long-term pursuit of a sexual liaison with a 12-year-old was indicative of a deeper pathology. According to his email correspondences, he appeared to believe, or at least engaged in the fantasy, that a prepubescent girl would be sexually gratified by him. He tried to explain this by saying that his "rotten curiosity" got the better of him, but the court was unconvinced, noting that Bonness's attitude "is the terrible fallacy of these crimes, and that is the disconnect, the problem in your personality with respect to taking those steps to make this happen." The court could rationally find that Bonness's curiosity had moved far beyond being a person who merely looked at images of children to being a person who physically assaulted those children.

B

{¶ 26} Finally, we must determine whether, under R.C. 2929.11(A), the sentence achieved the overriding purpose of punishing Bonness by using "the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources" and whether, under R.C. 2929.11(B), Bonness's sentence was "consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 27} The goal of "consistency" in sentencing as stated in R.C. 2929.11(B) does not mean uniformity. *State v. Klepatzki*, 8th Dist. No. 81676, 2003-Ohio-1529, 2003 WL 1564323, ¶ 32. Each case stands on its own unique facts, so we have concluded that "[a] list of child pornography cases is of questionable value in determining whether the sentences imposed are consistent for similar crimes committed by similar offenders since it does not take into account all the unique factors that may distinguish one case from another." *State v. Siber*, 8th Dist. No. 94882, 2011-Ohio-109, 2011 WL 198670, ¶ 15.

{¶ 28} Nevertheless, the comparison of one sentence against other sentences given for similar crimes is a useful guide for determining if the court abused its discretion in a particular case. Obviously, a survey of cases issued from this appellate district will tend to show only the worst sentences — we presume that defendants who are given much shorter sentences are not

appealing on that basis so any list of opinions from this court will necessarily be skewed to longer sentences. With this caveat in mind, we note that the most recent cases from this appellate district have affirmed lengthy sentences for possession of child pornography, but none that were as remotely lengthy as the sentence given to appellant. In *State v. Geddes*, 8th Dist. No. 88186, 2007-Ohio-2626, 2007 WL 1559544, we reversed a 30-year sentence on six counts of pandering sexually oriented materials when Geddes pleaded guilty to printing images of child pornography from a public library while on parole. While acknowledging that Geddes's actions were reproachable, we nonetheless concluded that the lengthy sentence was disproportionate to his conduct. On remand for resentencing, Geddes was given an 18-year sentence, which was affirmed on appeal. That sentence was broadly consistent with those given to similar offenders. *See, e.g.*, *State v. Mahan*, 8th Dist. No. 95696, 2011-Ohio-5154, 2011 WL 4600044 (16 years consecutive on 81 counts); *State v. Corrao*, 8th Dist. No. 95167, 2011-Ohio-2517, 2011 WL 2112721 (ten years on 23 counts); *State v. Carney*, 8th Dist. No. 95343, 2011-Ohio-2280, 2011 WL 1842257 (24 years on 21 counts); *Siber*, 8th Dist. No. 94882, 2011-Ohio-109, 2011 WL 198670 (three years, nine months on 14 fourth and fifth degree felony counts); *State v. Moon*, 8th Dist. No. 93673, 2010-Ohio-4483, 2010 WL 3721872 (20 years on 49 counts).

{¶ 29} Given these cases, we conclude that the 40-year sentence imposed on Bonness for eight child pornography counts was inconsistent with sentences imposed for similar crimes committed by similar offenders. The inconsistency arises because the court ran the child pornography counts consecutive to one another. While there is no question that Bonness committed very serious crimes that deserve punishment, we find it difficult on this record to justify 40 consecutive years in prison for the nonviolent crime of possessing child pornography. This is a de facto life sentence because it extends well beyond Bonness's current life expectancy. The sentence would thus place an undue burden on the state's resources as the prison system would be forced to pay for all of Bonness's medical care as he enters the final stages of his life. The court plainly intended to punish Bonness because he was a police officer, but as we explained, that is not a valid consideration because he was retired from the police force at the time he committed his crimes. The court's need to punish Bonness is understandable. But ordering consecutive sentences on the eight child pornography counts went beyond punishment, especially when similar offenders have been given significantly lower sentences.[2]

---

[2]We note with some interest that the child pornography laws in other countries are far less severe than in the United States. For example, a Canadian man in possession of the largest stash of child pornography ever found in that country — more than 4.5 *million* pornographic images — was sentenced to concurrent prison terms of five years for distribution, four and one half years

**{¶ 30}** This cause is reversed and remanded for resentencing.

It is ordered that appellant recover of appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR

---

for accessing, and four and one half years for possession. Interesting, the Crown had only sought a prison term of five to seven years. *See* http://www.cbc.ca/news/canada/new-brunswick/story/2011/11/14/nb-douglas-stewart-child-pornography-sentencing-612.html?cmp=rss (last visited January 30, 2012).