[Cite as *State v. Mannarino*, 2013-Ohio-1795.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98727**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHRISTOPHER MANNARINO

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555729

**BEFORE:** Boyle, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 2, 2013

**ATTORNEYS FOR APPELLANT**

Larry W. Zukerman
Paul B. Daiker
S. Michael Lear
Brian A. Murray
Zukerman, Daiker & Lear
3912 Prospect Avenue, East
Cleveland, Ohio   44115

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Brett Kyker
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1}  Defendant-appellant, Christopher Mannarino, appeals from his sentencing judgment.   He raises six assignments of error for our review:

1. The sentence imposed by the trial court is contrary to law as the trial court imposed consecutive sentences on appellant prior to making any of the findings required by R.C. 2929.14(C)(4) and/or by failing to make all the findings required by R.C. 2929.14(C)(4).

2. The record does not support the sentencing court's findings under division (C)(4) of R.C. 2929.14 and, as such, the sentence herein is contrary to law.

3. The trial court erred to the prejudice of appellant by failing to explain to appellant the effect of his guilty pleas pursuant to Crim.R. 11(C)(2)(b).

4. The trial court erred to the prejudice of appellant by imposing individual and consecutive sentences for counts eleven (11) and twenty-six (26) without obtaining a specific stipulation to a separate animus or separate acts to said counts and/or without engaging in a factual inquiry to determine whether counts 11 and 26 were allied offenses of similar import, in violation of appellant's right to be free from multiple punishments for the same crime, as guaranteed by the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution and appellant's right to be free from double jeopardy, as guaranteed by the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

5. The performance of appellant's trial counsel was deficient and prejudiced appellant in such a way as to violate appellant's state and federal constitutional rights to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

6. The trial court abused its discretion and/or committed plain error by sentencing appellant to fifteen (15) years in prison, because the sentence was grossly disproportionate to that imposed for other, similar offenders.

**{¶2}** Finding no merit to his appeal, we affirm.

Procedural History and Factual Background

**{¶3}** In November 2011, Mannarino was indicted on 139 counts involving child pornography, including 14 counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(2); 101 counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1); 23 counts of illegal use of minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1); and one count of possessing criminal tools in violation of R.C. 2923.24(A). All counts carried a forfeiture specification.

**{¶4}** In May 2012, Mannarino withdrew his former plea of not guilty and pleaded guilty to a total of 117 counts: 14 counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(2); 101 counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1); one count of illegal use of minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1); and one count of possessing criminal tools in violation of R.C. 2923.24(A). As part of his plea, Mannarino agreed that the 117 offenses to which he was pleading guilty to were not allied offenses of similar import. Mannarino also agreed to forfeit his computer, CDs, DVDs, thumb drive, and cell phone. The remaining 22

counts of illegal use of minor in nudity-oriented material or performance were dismissed.

{¶5} The trial court sentenced Mannarino to 5 years for each of the 14 counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(2) (Counts 11 to 24); 5 years for each of the 101 counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1) (Counts 26 to 126); 5 years for the one count of illegal use of minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1) (Count 25), and one year for possessing criminal tools in violation of R.C. 2923.24(A) (Count 149). The trial court ordered that Counts 11, 17, and 25 be served consecutive to each other, but concurrent to all other counts, for an aggregate prison term of 15 years in prison. The trial court also ordered that Mannarino forfeit the items as specified in his plea agreement, and further notified Mannarino that he would be subject to a mandatory term of five years of postrelease control and be labeled a Tier II sex offender.

{¶6} It is from this judgment that Mannarino appeals. We will address his assignments of error out of order for ease of discussion.

## Effect of Guilty Plea

{¶7} In his third assignment of error, Mannarino argues that the trial court failed to explain to him the effect of his guilty plea as required by Crim.R. 11(C)(2)(b). He further argues that he was not required to show that he was prejudiced by the trial court's failure because it was a "complete failure," rather than a partial one.

**{¶8}** This court recently addressed this exact issue in *State v. Simonoski*, 8th Dist. No. 98496, 2013-Ohio-1031. We explained:

> Informing a defendant of the effect of his or her plea is a nonconstitutional right, and, therefore, is subject to review for substantial compliance rather than strict compliance. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 11-12. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Furthermore, "failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice." *Griggs* at ¶ 12. The test for prejudice is "whether the plea would have otherwise been made." *Nero* at 108.

*Simonoski* at ¶ 9.

**{¶9}** To ensure that a plea to a felony charge is knowingly, intelligently, and voluntarily entered into, a trial court must follow the dictates of Crim.R. 11(C)(2). This provision provides that the court must address defendants personally and (1) determine that they understand the nature of the charges against them and of the maximum penalty involved, (2) inform them of and determine that they understand the effect of a plea of guilty or no contest and that the court may proceed with judgment and sentence, and (3) inform them of and determine that they understand the constitutional rights that they are giving up by entering into their plea. Crim.R. 11(C)(2)(a) – (c).

**{¶10}** "Effect of guilty or no contest pleas" is defined in Crim.R. 11(B), which states that a "plea of guilty is a complete admission of the defendant's guilt."

**{¶11}** At the plea hearing, the state informed the trial court of the negotiated plea that was reached with Mannarino, stating each count that Mannarino agreed to plead

guilty to, as well as the maximum penalty involved with each count. The state further told the court that as part of his plea, Mannarino agreed that the 117 offenses that he was pleading guilty to were not allied offenses, and that Mannarino would forfeit the items as specified in the indictment. Defense counsel stated that Mannarino understood "the recitation" given by the state.

{¶12} The court asked Mannarino a series of questions. In response, Mannarino said that he could read and write (in fact he said that he had obtained a bachelor's degree), he was not under the influence of drugs, alcohol, or medication, he did in fact understand what was happening at the plea hearing, no promises or threats had been made to induce him to change his plea, and that he was satisfied with the services of his defense counsel. The court then informed Mannarino of his constitutional rights and determined that he understood that he was waiving them by pleading guilty.

{¶13} Before asking Mannarino what his plea was to each of the 117 counts, the trial court asked Mannarino if he understood that it could proceed to judgment and sentence, which he replied he did. The trial court asked Mannarino if he understood that his plea included his agreement that the offenses to which he was pleading guilty to were not allied offenses of similar import; he stated that he did. The trial court then informed Mannarino that it could sentence him two to eight years in prison on each of the 116 second-degree felony counts and six to twelve months for possessing criminal tools, for a maximum penalty of 929 years. The trial court also informed Mannarino of the fines and costs it could impose. Mannarino indicated that he understood the maximum

penalty he could receive.   The trial court also informed Mannarino of postrelease control and the consequences for violating it, and informed him of the requirements of being labeled a Tier II sex offender.

{¶14} After reviewing the transcript of the plea hearing in this case, there is no question that the trial court complied with Crim.R. 11(C)(2)(a) and (c).   The trial court also asked Mannarino if he understood that by his pleading guilty, it could proceed with judgment and sentence, which is part of Crim.R. 11(C)(2)(b).   But Mannarino is correct that the trial court failed to inform him of the effect of his plea under Crim.R. 11(C)(2)(b), i.e., it did not ask him if he understood that a "plea of guilty is a complete admission of [his] guilt."

{¶15} As this court recently explained in *Simonoski*, "even if the court failed to substantially comply with explaining the effects of his plea," the defendant still has to prove that he was prejudiced by the court's failure.   *Id.* at ¶ 11.   Simonoski raised the exact argument that Mannarino does here, namely, "that the fact there was no compliance absolves him of the duty to prove he was prejudiced."   *Id.*   In support of his argument that he did not have to show prejudice, Simonoski cited to cases dealing with misdemeanors and postrelease control.   Although we did not list these cases in *Simonoski*, Mannarino also relies on cases dealing with misdemeanors and postrelease control.   *See E. Cleveland v. Zapo*, 8th Dist. No. 96718, 2011-Ohio-6757, and *E. Cleveland v. Brown*, 8th Dist. No. 97878, 2012-Ohio-4722.   Mannarino acknowledges that these cases deal with pleas involving misdemeanors, but he argues that "failure to

explain the effect of guilty pleas" in felony cases is even more egregious than it is in misdemeanor cases.

{¶16} Mannarino's argument is without merit. As we explained in *Simonoski*:

> [A]lthough that may be the law as to misdemeanors and postrelease control, the Ohio Supreme Court has consistently held that the court's failure to tell the defendant the effect of a plea to a felony, does not invalidate the plea unless appellant shows that he was prejudiced by the court's failure to substantially comply with the rule. *State v. Griggs*, 103 Ohio St.2d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12; *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 53; *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14-17. *See also State v. Petitto*, 8th Dist. No. 95276, 2011-Ohio-2391, ¶ 5-8 (court's failure to advise the defendant regarding the effect of the plea did not prejudice the defendant).

*Id.* at ¶ 11.

{¶17} We further explained in *Simonoski* that "[u]nlike in felony cases, misdemeanor cases *only* require the court to advise the defendant of the effect of the plea." (Emphasis added.) *Id.* at ¶ 14. But in felony cases, the court is required to advise the defendant pursuant to Crim.R. 11(C)(2), which ensures that the defendant knowingly, intelligently, and voluntarily entered into his or her plea. *Id.*

{¶18} To show prejudice, Mannarino must demonstrate that he would not have pleaded guilty to 117 counts had the trial court informed him of the effects of his plea. Because Mannarino contends that he does not have to show prejudice, he offers nothing in support of him being prejudiced. Thus, he has failed to establish that he would not have pleaded guilty had the trial court informed him of the effect of his plea.

{¶19} Moreover, as the Supreme Court held in *Griggs*:

A defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial.

*Griggs*, 103 Ohio St.2d 85, 2004-Ohio-4415, 814 N.E.2d 51, at syllabus.

**{¶20}** Accordingly, Mannarino's third assignment of error is overruled.

Consecutive Sentences

A. *First Assignment of Error*

**{¶21}** In his first assignment of error, Mannarino contends that the trial court failed to make the appropriate findings under R.C. 2929.14(C)(4) before imposing consecutive sentences. We disagree.

> An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Johnson*, 8th Dist. No. 97579, 2012-Ohio-2508, ¶ 6, citing *State v. Hites*, 3d Dist. No. 6-11-07, 2012-Ohio-1892, ¶ 7. Specifically, R.C. 2953.08(G)(2) provides that our review of consecutive sentences is not an abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id.* If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]" or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.*

*State v. Lebron*, 8th Dist. No. 97773, 2012-Ohio-4156, 976 N.E.2d 945, ¶ 5.

**{¶22}** R.C. 2929.14(C)(4), as revived, now requires that a trial court engage in a three-step analysis before imposing consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id.* Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.*

**{¶23}** In each step of this analysis, the statutory language directs that the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). In making these findings, a trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455, *10 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute.

*See State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).

**{¶24}** At the sentencing hearing, the trial court first heard from defense counsel who spoke at length as to why Mannarino should receive community control sanctions rather than prison. Defense counsel explained how Mannarino accepted responsibility immediately and cooperated with investigators. Defense counsel argued that although there were a significant amount of charges, many of them occurred on the same day, which "mischaracterizes and perhaps overemphasizes the culpability of Mr. Mannarino." Defense counsel also argued that there was no evidence that Mannarino would "engage in sexual activity with children in the future" or was a "risk to physically offend on a child in the future."

**{¶25}** Defense counsel then explained to the court that Mannarino sought immediate help from Candice Risen, a licensed social worker specializing in sexual offenders. Mannarino saw Risen weekly for the ten months preceding the sentencing hearing. Risen submitted a report for purposes of sentencing. In response to defense counsel's questions, Risen opined that (1) Mannarino was not a pedophile, (2) he did not present a risk to children, and (2) there was a minimal risk that he would ever return to viewing child pornography. Mannarino told Risen that he began looking at pornography

in 2000, while a student at John Carroll University. He had been viewing child pornography for approximately four years.

{¶26} Defense counsel further explained that Mannarino had no prior criminal history, either as a juvenile or an adult. Mannarino was an honor student at St. Peter Chanel High School, and graduated with honors at John Carroll University. Mannarino had been working as transportation director for Airgas Merchant Gases for four years. Mannarino moved in with his parents after he was arrested as a "personal check on his own lifestyle." Further, Mannarino had been attending a 12-step program called "Sex and Love Addicts Anonymous," two to three times a week for ten months.

{¶27} Further, defense counsel attached 12 letters to Mannarino's sentencing memorandum in support of Mannarino, including letters from Risen, Mannarino's former pastor, a chaplain for the 12-step program, persons who met Mannarino through the 12-step program, neighbors, friends, and his family (brother, mother, and father).

{¶28} Mannarino's father also spoke at the sentencing hearing, as did Mannarino himself, accepting responsibility and apologizing for his actions.

{¶29} The state explained that Mannarino was arrested as part of "an operation conducted by the Ohio Task Force," called "Operation Fall Clean Sweep." As part of this sweep, the state told the court that 26 people were indicted, and that Mannarino was "among the worst, if not the worse offender." The reasons given by the state as to why Mannarino was worse than other offenders were (1) the volume of child pornography found on his computer, with each count pertaining to a specific file "where a child is

either shown in a state of nudity or where a child engages in sexual activity," including toddlers, (2) the forensic examiner found 50 videos and 593 images on Mannarino's computer, (3) many of the files were found "still within the file sharing program," which allows other individuals to download files from it, (4) "a number of files" were found in folders within his email account, (5) Mannarino was not only storing child pornography for himself, but moving them around and sharing them, (6) some of the charges in the indictment to which Mannarino pleaded guilty were from images he sent via emails to his codefendant, Wendy Campbell, and (7) the fact that Mannarino admitted to chatting online with minors, talking about sex with them and the possibility of meeting in person (although he denied actually meeting a child in person). The state also read some of these "chat conversations" into the record.

{¶30} In the state's sentencing memorandum, it indicated that each charge in the indictment "was supported by a distinct and separate image or video of child sexual abuse." The state further informed the court that Counts 11 through 16 reflected files that were being shared via the file sharing network, Counts 17 through 25 reflected files that Mannarino emailed to Wendy Campbell, and the remaining counts reflected the files that were found on Mannarino's computer. Based upon all of these reasons, the state recommended a significant prison term.

{¶31} The court explained that it reviewed Mannarino's presentence investigation report ("PSI"). In the report, it indicates that one of the files that Mannarino possessed was a 26-minute video depicting child pornography. The court stated:

I can barely read that without being appalled, let alone I couldn't even imagine watching something like that.

So I find these types of charges to be extremely disturbing, and I do find that while there is no physically, or you physically touching any of the children, I do find that you looking at this and possessing it and exchanging it and sharing it is a risk to children and our community.

I mean, children are the most vulnerable citizens in our community next to the elderly.

So I find that this type of behavior is really appalling and, while you may not have touched any of them physically, I find that those actions are so harmful and harmful to our community as well.

\* \* \*

As I indicated, it is overwhelming to me the amount of information and files of children in the most vulnerable positions that I could even imagine, and it is incomprehensible to me that you had so much on your computer and engaged in such a sharing process that I feel really violates children and is harmful to our community.

\* \* \*

So in looking at what you did plead to, in considering all of the statements made by your family, by you, by your counsel, from the state of Ohio, and thoroughly examining and reading your [PSI], the sentencing memorandum that was prepared on your behalf by your lawyer, all the letters that were written on your behalf from your family, who seems to be very supportive of you, and in considering the memorandum prepared by the state of Ohio, it is this court's position that in considering all the relevant seriousness and recidivism factors, and in insuring that the public is protected from future crime and that you are punished, you did plead to a number of felonies of the second degree, where there is a presumption in favor of prison, so I am going to impose a prison term on Counts [11 through 24] of a period of five years.

On Counts [26 through 126], I am imposing a prison term of five years.

On Count 148, I am imposing a prison term of one year.

Counts 11, 17, and 26 are all going to run consecutive to one another, for a total prison term of 15 years.

And I find that consecutive prison terms are necessary to protect the community and punish the offender, it is not disproportionate, and I find that the harm was so great or unusual that a single term would not adequately reflect the seriousness of your conduct.

I find that a consecutive prison term is necessary to protect our public from you, Mr. Mannarino.

All other counts are going to run concurrent to one another.

{¶32} After reviewing the transcript of the sentencing hearing in its entirety, we find that the trial court fully met the statutory requirements of R.C. 2929.14(C)(4) to impose consecutive sentences.

{¶33} Mannarino argues that the trial court imposed consecutive sentences prior to making its findings on the record. We disagree. Although the trial court technically gave the sentences first, it stated its findings immediately after it gave the sentence. This is not the same, as Mannarino argues, as adding the findings in a journal entry "after the fact" when it did not state them at the sentencing hearing.

{¶34} Mannarino further argues that the trial court's findings were not complete because the trial court did not use the exact words of the statute. For example, he claims that because the trial court found that consecutive sentences were "not disproportionate," but did not specify that they were "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." But as we have repeatedly stated, the trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing."

**{¶35}** Mannarino also argues that this case is analogous to *Lebron*, 8th Dist. No. 97773, 2012-Ohio-4156, 976 N.E.2d 945, where we found that the trial court failed to make the required findings before imposing consecutive sentences. We disagree. In *Lebron*, the trial court only discussed the defendant's criminal history before imposing consecutive sentences. We found that was not enough under R.C. 2929.14(C)(4).

**{¶36}** Finally, Mannarino cites to *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, contending that the trial court should have also given its reasons for each of its findings before imposing consecutive sentences. Mannarino argues this while also acknowledging that the legislature *did not revive the language* in R.C. 2929.19(B)(2)(c) that *Comer* had relied on when it held that courts must also give its reasons. As we have stated:

> Notably, however, the General Assembly deleted R.C. 2929.19(B)(2)(c) in H.B. 86. This was the provision in S.B. 2 that had required sentencing courts to state their *reasons* for imposing consecutive sentences on the record. Accordingly, a trial court is not required to articulate and justify its findings at the sentencing hearing. A trial court is free to do so, of course. But where, as here, there is no statutory requirement that the trial court articulate its reasons, it does not commit reversible error if it fails to do so, as long as it has made the required findings.

*State v. Goins*, 8th Dist. No. 98256, 2013-Ohio-263, ¶ 11.

**{¶37}** While we agree that the Ohio Criminal Sentencing Commission's prediction, i.e., that the legislature's decision to "remove the companion directing the judges to give its reasons for consecutive sentences (striking [R.C.] 2929.19(B)(2)(c))" limited "the value of the revived language" set forth in H.B. 86, this court cannot write the law; we merely interpret it. The legislature's choice to remove R.C. 2929.19(B)(2)(c) requiring judges to give their reasons is perplexing, given its overall goal in H.B. 86. *See State v. Johnson*, 8th Dist. No. 98245, 2013-Ohio-575 (S. Gallagher, J., concurring in part and dissenting in part) ("a main purpose behind H.B. 86 was to reduce Ohio's prison population"). Nonetheless, this court cannot require trial courts to give their reasons for imposing consecutive sentences when the legislature intentionally did not.

**{¶38}** Accordingly, Mannarino's first assignment of error is overruled.

B. *Second Assignment of Error*

**{¶39}** In his second assignment of error, Mannarino argues that the record does not clearly and convincingly support the trial court's findings for imposing consecutive sentences. He claims that under R.C. 2929.11 and 2929.12, the record does not support the trial court's findings that he is likely to commit future crimes. Therefore, he maintains that the trial court's findings — that consecutive sentences were necessary to protect the public and were not disproportionate to the danger he poses to the public — were contrary to law.

**{¶40}** R.C. 2929.12 provides that "a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(B) and (C) set forth considerations relating to the seriousness of the offender's conduct (not at issue in Mannarino's second assignment of error). The relevant factors are set forth in R.C. 2929.12(D) and (E), and relate to the likelihood of the offender's recidivism.

**{¶41}** We agree that most of the factors under R.C. 2929.12(D) and (E) are in Mannarino's favor. He had no prior convictions as a juvenile or adult, he led a law-abiding life for a significant number of years (he was 30 at the time of the sentencing hearing), and he showed genuine remorse for the offenses. But we do not agree that R.C. 2929.12(E)(4) ("the offense was committed under circumstances not likely to recur") is in Mannarino's favor.

**{¶42}** Mannarino's sexual addiction counselor opined that the risk of him viewing child pornography in the future was minimal if he continued his treatment, but she did not say that there was no risk. Moreover, the trial court had other substantial information before it to determine whether Mannarino would likely reoffend in the future.

**{¶43}** At the sentencing hearing, the trial court considered the report summarizing the offenses in the PSI, where Mannarino admitted to everything when the investigators arrived. He told officers that he had been downloading child pornography for many years from peer-to-peer networks. He indicated that he had "files in the range of

hundreds." He had videos and images of children ranging from three years old to teenagers. He told investigators that he would search "young, pre-teen, PTHC, and PTSC to find child pornography." He admitted "that he has a problem and continuously stated that he was sick." He kept saying "that his life was over, he was going to prison, and he would die in prison because of the amount of child pornography he had on his computer." He further admitted to chatting with minors on Yahoo about sex, knowing they were minors. He further admitted to sharing child pornography and emailing it.

{¶44} Further, according to Mannarino's sexual addiction counselor, Mannarino began using pornography in 2000. When his relationship with his girlfriend ended, "a year out of college," he began looking at pornography excessively. Eventually, "when the conventional adult pornography became boring, he increasingly turned to more deviant and bizarre imagery," including child pornography. The counselor concluded that Mannarino's "sexual addiction became his escape and substitution for real life."

{¶45} Finally, after he was arrested, Mannarino sold his condominium and moved back in with his parents as a check on his "lifestyle." This was an extreme move. But it is not likely that a 30-year-old adult will live with his parents forever. He would most likely obtain separate housing in the future, having unrestricted and unlimited access to the Internet. Based on the pervasiveness of the Internet and the difficulty in overcoming addiction, the trial court's findings that consecutive sentences were necessary to protect the public and were not disproportionate to the danger he poses to the public were not clearly and convincingly contrary to law.

**{¶46}** Accordingly, Mannarino's second assignment of error is overruled.

Allied Offenses

**{¶47}** In his fourth assignment of error, Mannarino argues that the trial court erred by not determining if Counts 11 and 26 were allied offenses of similar import. We disagree.

**{¶48}** Mannarino asserts that this court should review this issue for plain error. But as part of his plea bargain, Mannarino stipulated that the offenses to which he was pleading guilty were not allied offenses of similar import. Thus, the trial court had no obligation to determine if Counts 11 and 26 were allied offenses. As the Ohio Supreme Court explained in *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 29:

> With respect to the argument that the merger of allied offenses will allow defendants to manipulate plea agreements for a more beneficial result than they bargained for, we note that nothing in this decision precludes the state and a defendant from stipulating in the plea agreement that the offenses were committed with separate animus, thus subjecting the defendant to more than one conviction and sentence. *When the plea agreement is silent* on the issue of allied offenses of similar import, however, the trial court is obligated under R.C. 2941.25 to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense.

(Emphasis added.)

**{¶49}** Because the plea agreement here was not silent, the trial court was not obligated under R.C. 2941.25 to determine whether the offenses were allied offenses.

**{¶50}** Mannarino also cites to *State v. Baker*, 8th Dist. No. 97139, 2012-Ohio-1833, claiming that the facts of his case are analogous to the facts in that case.

We disagree.   In *Baker*, we found that the "record [was] nearly devoid of any facts." That is not the case here.

{¶51} Count 11 charged pandering sexually-oriented matter involving a minor under R.C. 2907.322(A)(2), which provides that

> No person, with knowledge of the character of the material or performance involved, shall * * * [a]dvertise for sale or dissemination, sell, distribute, transport, disseminate, exhibit, or display any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality.

The state explained that this count referred to files that were being actively shared on Mannarino's computer.

{¶52} Count 26 charged pandering sexually-oriented matter involving a minor under R.C. 2907.322(A)(1), which provides that

> No person, with knowledge of the character of the material or performance involved, shall * * * [c]reate, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]

The state explained that this count referred to a file that was saved on Mannarino's computer.

{¶53} The state placed evidence on the record at the sentencing hearing, through its sentencing memorandum, that each charge in the indictment "was supported by a distinct and separate image or video of child sexual abuse."   Each child pornography file or image that is downloaded is "a new and distinct crime."   *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 93.   Further, this court has previously held that "multiple convictions are allowed for each individual image because a separate animus exists every

time a separate image or file is downloaded and saved." *State v. Hendricks*, 8th Dist. No. 92213, 2009-Ohio-5556, ¶ 35, citing *State v. Stone*, 1st Dist. No. C-040323, 2005-Ohio-5206; *State v. Yodice*, 11th Dist. No. 2001-L-155, 2002-Ohio-7344. Thus, there is no question in this case that the pandering child pornography offenses that Mannarino was convicted of are not allied offenses of similar import.

**{¶54}** Accordingly, Mannarino's fourth assignment of error is overruled.

<u>Disproportionate Sentence</u>

**{¶55}** Mannarino asserts in his sixth assignment of error that his sentence was grossly disproportionate to other sentences imposed for similarly situated offenders.

**{¶56}** Mannarino acknowledges that he did not raise the issue of proportionality at his sentencing hearing. Thus, he has waived all but plain error.

**{¶57}** R.C. 2929.11(B) provides: "A sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders." But there is a distinction between consistent and identical sentences, which was noted by this court in *State v. Georgakopoulos*, 8th Dist. No. 81934, 2003-Ohio-4341, ¶ 26:

> The legislature's purpose for inserting the consistency language contained in R.C. 2929.11(B) is to make consistency rather than uniformity the aim of the sentencing structure. See Griffin and Katz, Ohio Felony Sentencing Law (2001), 59. Uniformity is produced by a sentencing grid, where all persons convicted of the same offense with the same number of prior convictions receive identical sentences. *Id.* Consistency, on the other hand, requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable. Under this meaning of "consistency," two defendants convicted of the same offense with a similar or identical history of recidivism could properly be sentenced to different terms of imprisonment.

*Id.*, quoting *State v. Quine*, 9th Dist. No. 20968, 2002-Ohio-6987.

{¶58} When sentencing an offender, each case stands on its own unique facts. Thus, this court has concluded that

> [a] list of child pornography cases is of questionable value in determining whether the sentences imposed are consistent for similar crimes committed by similar offenders since it does not take into account all the unique factors that may distinguish one case from another.

*State v. Siber*, 8th Dist. No. 94882, 2011-Ohio-109, ¶ 15.

{¶59} Mannarino argues that his sentence is disproportionate to similarly situated offenders because he received a 15-year sentence compared to lesser sentences received by 18 other defendants charged with similar child pornography offenses in Cuyahoga County. He sets forth these 18 cases, including the name of the case, the case number, the statutory offense each offender was convicted of and the number of counts, and the sentence the offender received.

{¶60} Recently, in *State v. Stein*, 8th Dist. No. 97395, 2012-Ohio-2502, this court was faced with the same issue regarding a defendant who had been convicted of one count of pandering sexually oriented matter involving a minor under R.C. 2907.322(A)(2), 54 counts of pandering sexually-oriented matter involving a minor under R.C. 2907.322(A)(1), 24 counts of illegal use of a minor in nude material or performance under R.C. 2907.323(A)(1), and one count of possessing criminal tools under R.C. 2923.24(A). In *Stein*, the defendant received a ten-year prison sentence. Stein argued on appeal that his sentence was disproportionate to similarly situated offenders, citing to a list of 70 cases from Cuyahoga County involving child pornography. In each case,

Stein gave the same basic information that Mannarino sets forth here. In overruling his argument, we explained:

> A review of the list * * * does not tell any facts about the individual case. Thus, we do not know whether the offenders in those cases were similar to Stein. As this court recently stated in [*State v. Mahan*, 8th Dist. No. 95696, 2011-Ohio-5154], in upholding a 16-year sentence on an offender who pleaded no contest to 95 counts of various child pornography charges, "these journal entries tell us little, if anything, of the offender characteristics and provide no information beyond the convictions and terms of the sentences." *Id*., 2011-Ohio-5154, at ¶ 60.

{¶61} Just as in *Stein*, the cases that Mannarino lists do not tell us anything about the individual case, and thus, are of no use to this court.

{¶62} In support of his argument that his sentence is disproportionate, Mannarino also cites to *State v. Bonness*, 8th Dist. No. 96557, 2012-Ohio-474, where this court reversed a 40-year consecutive sentence in a child pornography case. Bonness pleaded guilty to one count of attempted rape; eight counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(1); six counts of pandering sexually-oriented matter involving a minor in violation of R.C. 2907.322(A)(5); eight counts of the illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3); and two counts of possession of criminal tools, in violation of R.C. 2923.24(A). We determined that his sentence was inconsistent with other cases that we had previously affirmed on appeal, acknowledging that "a survey of cases issued from this appellate district will tend to show only the worst sentences," because "defendants who are given much shorter sentences are not appealing on that basis." *Id.* at ¶ 28, referencing *State v. Mahan*, 8th Dist. No. 95696, 2011-Ohio-5154 (16 years

consecutive on 81 counts); *State v. Corrao*, 8th Dist. No. 95167, 2011-Ohio-2517 (10 years on 23 counts); *State v. Carney*, 8th Dist. No. 95343, 2011-Ohio-2280 (24 years on 21 counts); *State v. Siber*, 8th Dist. No. 94882, 2011-Ohio-109 (3 years, 9 months on 14 fourth and fifth degree felony counts); *State v. Moon*, 8th Dist. No. 93673, 2010-Ohio-4483 (20 years on 49 counts).

**{¶63}** But Mannarino's sentence of 15 years is not similar to Bonness's 40-year sentence, which we determined was more like a "de facto life sentence." *Bonness* at ¶ 29. Mannarino's sentence is more similar to *Mahan*, where the defendant was a first-time offender, as Mannarino is here, and received a 16-year sentence. And similar to Mannarino, Mahan also had the support of family and friends, was gainfully employed, and had attended 100 meetings for sexual addicts. We stated in *Mahan*:

> We acknowledge that a 16-year prison term imposed on a first-time offender who has, by all accounts, led an otherwise productive, law abiding life is a harsh sentence and is perhaps not one that we may have imposed. Nonetheless, the sentence was significantly less than what the court could have imposed based on defendant's 95 convictions. There was ample testimony in the record of the harm that has been, and continues to be, inflicted upon the victims who are the subjects of the material being viewed in these types of cases. The images, once uploaded, continue to circulate on the internet where individuals, like defendant, view them and make them available for viewing by others. The wide range of sentences that have been apparently imposed on defendants convicted of similar offenses is the result of the discretion vested in the trial court. Defendant's sentence was within the statutory range, lawful, and supported by the record, thus we cannot say it was unconscionable or otherwise an abuse of the trial court's discretion.

*Id.* at ¶ 63.

{¶64} Further, we note that in *State v. Geddes*, 8th Dist. No. 88186, 2007-Ohio-2626, we reversed a 30-year sentence on six counts of pandering sexually oriented materials when Geddes pleaded guilty to printing images of child pornography from a public library while on parole. While acknowledging that Geddes's actions were reproachable, we nonetheless concluded that the lengthy sentence was disproportionate to his conduct. On remand for resentencing, however, Geddes was given an 18-year sentence, which this court affirmed on appeal. *See State v. Geddes*, 8th Dist. No. 91042, 2008-Ohio-6489.

{¶65} Moreover, the record here reflects that the trial court properly considered the statutory factors and guidelines in R.C. 2929.11 and 2929.12 before imposing defendant's sentence. R.C. 2929.12(B)(1) and (2) require the court to consider the "physical and mental injury" suffered by the victim of the offense and whether that injury was "exacerbated" because of the victim's physical or mental condition or age. Although Mannarino had no prior criminal history and had otherwise led a law-abiding life, the trial court balanced those factors with the fact that the children in the images and videos were the victims of Mannarino's crimes. As this court has stated before,

> "[c]hild pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed." *See* Effective Child Pornography Prosecution Act of 2007, Pub.L. No. 110-358, Section 102(3), 122 Stat. 4001 (2008). *See also* Leary, Self-Produced Child Pornography: The Appropriate Societal Response to Juvenile Self-Sexual Exploitation, 15 Va.J.Soc.Policy & L. 1, 9-11 (2007) (arguing that an image of child pornography is a permanent record that "uniquely affects victims far into the future" and that "creates a continual cycle of abuse"). It follows that the court did not abuse its

discretion by relying on the revictimization of the children shown in the pornography as a sentencing factor.

*Bonness*, 8th Dist. No. 96557, 2012-Ohio-474, ¶ 14.

**{¶66}** Accordingly, we find no error, plain or otherwise, in the porportionality of Mannarino's sentence.

<u>Ineffective Assistance of Counsel</u>

**{¶67}** In his fifth assignment of error, Mannarino argues that his trial counsel was ineffective for advising him to accept a plea agreement where he agreed that the offenses were not allied offenses and for failing to raise the issue of proportionality.

**{¶68}** To demonstrate ineffective assistance of counsel, defendants must satisfy both parts of a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendants must first show that their trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution. *Id.* Second, defendants must establish that counsel's "deficient performance prejudiced the defense." *Id.* The failure to prove either prong of the *Strickland* test is fatal to a claim of ineffective assistance. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland*, *supra*.

**{¶69}** We have already determined that the offenses to which Mannarino pleaded guilty to were not allied offenses of similar import. Thus, his counsel was not deficient for advising him to plea when the state's deal turned on whether Mannarino agreed that the offenses were not allied offenses.

**{¶70}** And because we have determined that Mannarino's sentence was not disproportionate to similarly situated offenders, his counsel was also not ineffective for failing to raise the issue of proportionality.

**{¶71}** Mannarino's fifth assignment of error is overruled.

**{¶72}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR